1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARACELI RAZO,<br><br>                    Plaintiff,<br><br>         v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | Case No. EDCV 14-2009 JC<br><br>MEMORANDUM OPINION |

## I.    SUMMARY

On September 26, 2014, plaintiff Araceli Razo ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have consented to proceed before
the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; October 2, 2014 Case Management Order ¶ 5.

///

///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    On January 24, 2011, plaintiff filed an application for Disability Insurance

7    Benefits.  (Administrative Record ("AR") 11, 162).  Plaintiff asserted that she

8    became disabled on January 4, 2010, due to lupus, anemia, high blood pressure,

9    history of chronic DVT, pulmonary embolism.  (AR 176).  The ALJ examined the

10   medical record and heard testimony from plaintiff (who was represented by

11   counsel) and a vocational expert at hearings on August 2, 2012 and January 28,

12   2013.  (AR 27-45).  In addition, the ALJ considered the opinions of Dr. Samuel

13   Landau, an impartial medical expert who reviewed the record medical evidence

14   and answered interrogatories regarding plaintiff's abilities at the request of the

15   ALJ.  (AR 19, 525-34).

16   On February 7, 2013, the ALJ determined that plaintiff was not disabled

17   through the date of the decision.  (AR 11-22).  Specifically, the ALJ found:

18   (1) plaintiff suffered from the following severe impairments:  morbid obesity,

19   chronic thrombophlebitis of the lower extremities, chronic pain due to

20   fibromyalgia, pulmonary embolism times two, systemic lupus erythematosus

21   (SLE), mild iron deficiency anemia, and diabetes mellitus (AR 13-14);

22   (2) plaintiff's impairments, considered singly or in combination, did not meet or

23   medically equal a listed impairment (AR 14-15); (3) plaintiff retained the residual

24   functional capacity to perform light work (20 C.F.R. § 404.1567(b)) with

25

26

27

28       [1]The harmless error rule applies to the review of administrative decisions regarding
     disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (citations omitted).

1  additional limitations[2] (AR 15); (4) plaintiff could perform her past relevant work
2  as a medical biller (AR 21); and (5) plaintiff's allegations regarding her limitations
3  were not entirely credible (AR 17).

4      The Appeals Council denied plaintiff's application for review.  (AR 1).

5  **III.   APPLICABLE LEGAL STANDARDS**

6      **A.   Sequential Evaluation Process**

7      To qualify for disability benefits, a claimant must show that the claimant is
8  unable "to engage in any substantial gainful activity by reason of any medically
9  determinable physical or mental impairment which can be expected to result in
10  death or which has lasted or can be expected to last for a continuous period of not
11  less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)
12  (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The
13  impairment must render the claimant incapable of performing the work the
14  claimant previously performed and incapable of performing any other substantial
15  gainful employment that exists in the national economy.  Tackett v. Apfel, 180
16  F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

17      In assessing whether a claimant is disabled, an ALJ is to follow a five-step
18  sequential evaluation process:

19      (1)   Is the claimant presently engaged in substantial gainful activity?  If
20          so, the claimant is not disabled.  If not, proceed to step two.

21

22

23      [2]The ALJ determined that plaintiff:  (i) could occasionally lift and carry 20 pounds, and
frequently lift and carry 10 pounds; (ii) could stand and walk for two hours in an eight-hour
24  workday for no more than 15 to 30 minutes at a time; (iii) could sit without limitation as long as
plaintiff takes normal breaks; (iv) must be able to elevate her feet six inches above floor level as
25  needed for one to three minutes every hour; (v) could occasionally climb ramps and stairs;
(vi) could occasionally stoop and bend, but could not squat, crawl, kneel, run, jump, or operate
26  foot pedals or controls; (vii) could not climb ladders, ropes, or scaffolds; (viii) would need an air
conditioned environment with temperature control; (ix) needed to avoid work at heights or
27  balancing, operation of heavy machinery, motorized vehicles, or unprotected machinery; and
(x) "should not work or be responsible for safety of others."  (AR 15).
28

1     (2)    Is the claimant's alleged impairment sufficiently severe to limit

2            the claimant's ability to work?  If not, the claimant is not

3            disabled.  If so, proceed to step three.

4     (3)    Does the claimant's impairment, or combination of

5            impairments, meet or equal an impairment listed in 20 C.F.R.

6            Part 404, Subpart P, Appendix 1?  If so, the claimant is

7            disabled.  If not, proceed to step four.

8     (4)    Does the claimant possess the residual functional capacity to

9            perform claimant's past relevant work?  If so, the claimant is

10           not disabled.  If not, proceed to step five.

11     (5)    Does the claimant's residual functional capacity, when

12            considered with the claimant's age, education, and work

13            experience, allow the claimant to adjust to other work that

14            exists in significant numbers in the national economy?  If so,

15            the claimant is not disabled.  If not, the claimant is disabled.

16 Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th

17 Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at

18 1110 (same).

19       The claimant has the burden of proof at steps one through four, and the

20 Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262

21 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch

22 v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of

23 proving disability).

24      **B.**    **Standard of Review**

25       Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

26 benefits only if it is not supported by substantial evidence or if it is based on legal

27 error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

28 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

1  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
2  mind might accept as adequate to support a conclusion."  Richardson v. Perales,
3  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
4  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
5  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

6      To determine whether substantial evidence supports a finding, a court must
7  "'consider the record as a whole, weighing both evidence that supports and
8  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.
9  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
10  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
11  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
12  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

13  **IV.   DISCUSSION**

14      **A.   The ALJ's Evaluation of the Medical Evidence Is Free of**
15          **Material Error**

16          **1.   Pertinent Law**

17      In Social Security cases, courts give varying degrees of deference to
18  medical opinions depending on the type of physician who provided them, namely
19  "treating physicians," "examining physicians," and "nonexamining physicians."
20  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation
21  marks omitted).  A treating physician's opinion is generally given the most weight,
22  and may be "controlling" if it is "well-supported by medically acceptable clinical
23  and laboratory diagnostic techniques and is not inconsistent with the other
24  substantial evidence in [the claimant's] case record[.]"  Orn v. Astrue, 495 F.3d
25  625, 631 (9th Cir. 2007) (citations and quotation marks omitted); see also
26  20 C.F.R. § 404.1527(c)(2).  An examining, but non-treating physician's opinion
27  is entitled to less weight than a treating physician's, but more weight than a
28  nonexamining physician's opinion.  See id. (citation omitted).

5

1    A treating physician's opinion is not necessarily conclusive, however, as to

2 a claimant's medical condition or disability.  <u>Magallanes v. Bowen</u>, 881 F.2d 747,

3 751 (9th Cir. 1989) (citation omitted).  An ALJ may reject a treating physician's

4 uncontroverted opinion by providing "clear and convincing reasons supported by

5 substantial evidence in the record."  <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th

6 Cir. 1998) (citation omitted).  Where a treating physician's opinion conflicts with

7 another doctor's opinion, an ALJ may reject the treating opinion "by providing

8 specific and legitimate reasons that are supported by substantial evidence."

9 <u>Garrison</u>, 759 F.3d at 1012 (citation and footnote omitted).

**2.     The ALJ's Evaluation of the Medical Expert's Opinions Is**
10
**Free of Material Error**
11

12    When asked to opine as to whether plaintiff met or equaled a listed

13 impairment, Dr. Landau stated in his response to the ALJ's interrogatories, in part,

14 "I could not find objective evidence in support of [plaintiff's fibromyalgia]

15 diagnosis (such as 11/18 TTP's or 'widespread pain, above & below the waist, &

16 axial pan.'"  (AR 533).  As plaintiff correctly notes, there is evidence in the record

17 which contradicts Dr. Landau's statement – specifically, treatment notes from Dr.

18 Christine Leehealey, one of plaintiff's treating physicians, which reflect that on

19 objective testing plaintiff had tender points that could support a fibromyalgia

20 diagnosis.  (AR 381, 389-90).  To the extent the ALJ erred in relying on Dr.

21 Landau's opinions in concluding that plaintiff did not have a listing-level

22 impairment, any such error was harmless.  For example, although Dr. Landau said

23 he "could not find objective evidence" supporting plaintiff's fibromyalgia

24 diagnosis, the medical expert nonetheless concluded that "the records are

25 consistent with a diagnosis of fibromyalgia," and based on that conclusion still

26 opined that plaintiff's fibromyalgia did not meet or equal a listed impairment.  (AR

27 533).  Plaintiff does not plausibly show that due to such error the ALJ failed

28 adequately to consider a listing that plausibly applies to plaintiff's case.  <u>See, e.g.</u>,

6

1     <u>Lewis v. Apfel</u>, 236 F.3d 503, 514 (9th Cir. 2001) (plaintiff must present plausible

2     theory as to how an impairment or combination of impairments equals a listed

3     impairment).  Moreover, to the extent Dr. Landau, in fact, failed adequately to

4     consider Dr. Leehealey's findings, plaintiff does not show that such findings

5     reflect functional limitations beyond those already accounted for in the ALJ's

6     residual functional capacity assessment for plaintiff.

7         Accordingly, a remand or reversal on this basis is not warranted.

8              **3.**      **The ALJ Properly Considered the Opinions of Plaintiff's**

9                        **Treating Rheumatologist**

10         Plaintiff contends that the ALJ failed properly to consider the opinions

11     expressed by plaintiff's treating rheumatologist, Dr. Andre Babajanians, in an

12     August 14, 2012 Lupus Residual Functional Capacity Questionnaire – *i.e.*, that

13     plaintiff's impairments and related limitations would generally prevent plaintiff

14     from performing even sedentary work, and would specifically cause plaintiff to be

15     absent from work possibly "[m]ore than four days per month" (collectively "Dr.

16     Babajanians' Opinions").  (AR 507-12).  The Court disagrees.

17         First, the Lupus Residual Functional Capacity Questionnaire prepared by

18     Dr. Babajanians contained only check-the-box opinions.  (AR 507-12).  As the

19     ALJ noted, Dr. Babajanians' Opinions provided very little explanation of the

20     evidence upon which Dr. Babajanians relied to conclude that plaintiff would likely

21     be absent from work "[m]ore than four days per month" or to find the other noted

22     significant physical limitations.  The ALJ properly rejected Dr. Babajanians'

23     Opinions on this basis alone.  <u>See, e.g.</u>, <u>Crane v. Shalala</u>, 76 F.3d 251, 253 (9th

24     Cir. 1996) ("ALJ [] permissibly rejected [medical evaluations] because they were

25     check-off reports that did not contain any explanation of the bases of their

26     conclusions."); <u>De Guzman v. Astrue</u>, 343 Fed. Appx. 201, 209 (9th Cir. 2009)

27     (ALJ "is free to reject 'check-off reports that d[o] not contain any explanation of

28     the bases of their conclusions.'") (citing <u>id</u>.); <u>see also</u> <u>Murray v. Heckler</u>, 722 F.2d

7

1     499, 501 (9th Cir. 1983) (expressing preference for individualized medical

2     opinions over check-off reports).

3          Second, the ALJ also properly rejected Dr. Babajanians' Opinions, in part,

4     because they were not supported by the physician's own notes or other objective

5     medical evidence in the record as a whole.  See Bayliss v. Barnhart, 427 F.3d

6     1211, 1217 (9th Cir. 2005) ("The ALJ need not accept the opinion of any

7     physician, including a treating physician, if that opinion is brief, conclusory, and

8     inadequately supported by clinical findings.") (citation and internal quotation

9     marks omitted); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating

10    physician's opinion properly rejected where treating physician's treatment notes

11    "provide no basis for the functional restrictions he opined should be imposed on

12    [the claimant]").  For example, as the ALJ noted, plaintiff's treatment records

13    prepared by Dr. Babajanians generally reflect that plaintiff "received routine,

14    conservative, and non-emergency treatment since the alleged onset date."  (AR 17;

15    412-27, 453, 466-68, 480-7, 500-06, 544, 546-47, 550-51, 558, 588-94, 596-98,

16    613-20, 647-56).  Medical records for other physicians in Dr. Babajanians' same

17    medical group document little more, and even specifically show that plaintiff was

18    often instructed to continue on the same medication for her conditions, and return

19    for follow up visits up to eight weeks later, and even on an "as needed" basis."

20    (AR 392-93, 398-400, 403-14, 425-27, 429-65, 469-77, 474-79, 488-99, 542, 552-

21    56, 559-71, 573-87, 599-612, 620-33, 635-47).  While plaintiff suggests that the

22    medical evidence actually supports Dr. Babajanians' Opinions (Plaintiff's Motion

23    at 8), this Court will not second-guess the ALJ's reasonable determination to the

24    contrary, even if the evidence could give rise to inferences more favorable to

25    plaintiff.  See Robbins, 466 F.3d at 882 (citation omitted).

26         Third, the ALJ also properly rejected Dr. Babajanians' Opinions to the

27    extent they did not meet the durational requirement – *i.e.*, they "[did] not establish

28    an inability to perform work activity for any twelve month period of time."  (AR

16) (citing, *inter alia*, Exhibit 12F [AR 464]); see 42 U.S.C. § 423(d)(1)(A);

Burch, 400 F.3d at 679.  Dr. Babajanians' Opinions suggest that the physician had

only treated plaintiff from approximately August 2011 to August 2012.  (AR 507,

512).  As discussed above, the medical records do not reflect treatment by Dr.

Babajanians for any more than routine medical issues, much less any impairment

that could cause the noted disabling limitations for a period of 12 months or

greater.  The ALJ was not required to provide any further explanation for rejecting

Dr. Babajanians' Opinions.  See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th

Cir. 1984) (An ALJ must provide an explanation only when he rejects "significant

probative evidence.") (citation omitted).

Fourth, to the extent, as plaintiff contends (Plaintiff's Motion at 5, 7), the

ALJ improperly rejected Dr. Babajanians' Opinions as opinions concerning "a

matter reserved to the Commissioner," any error was harmless because the

remaining reasons identified by the ALJ are independently sufficient to discount

the credibility of Dr. Babajanians' Opinions and are supported by substantial

evidence, and because the ALJ's finding was irrelevant to the ultimate disability

determination.  See Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008)

(error in ALJ's failure properly to consider medical opinion evidence considered

harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the

ALJ's ultimate disability conclusion. . . .") (citing Stout, 454 F.3d at 1055).

Finally, to the extent the ALJ rejected Dr. Babajanians' Opinions, his

decision is supported by the conflicting opinions of the state-agency examining

physician, Dr. Kristof Siciarz – who determined, in part, that plaintiff had fewer

limitations than the ALJ (AR 319-23), and the medical expert Dr. Landau, whose

residual functional capacity assessment the ALJ essentially adopted.  (AR 15, 19,

525-34).  The opinions of Dr. Siciarz were supported by the physician's

independent examination of plaintiff (AR 320-22), and thus, without more,

constituted substantial evidence upon which the ALJ could properly rely to reject

Dr. Babajanians' Opinions.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion on its own constituted substantial evidence, because it rested on physician's independent examination of claimant) (citations omitted).  Dr. Landau's opinions also constituted substantial evidence supporting the ALJ's decision since they were supported by the other medical evidence in the record as well as Dr. Siciarz's opinions and underlying independent examination.  See Tonapetyan, 242 F.3d at 1149 (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("[R]eports of [a] nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

Accordingly, a remand or reversal on this basis is not warranted.

**B.    The ALJ Properly Evaluated Plaintiff's Credibility**

**1.    Pertinent Law**

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.  Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"

10

1   Id. at 1036 (citations omitted).  "In making a credibility determination, the ALJ

2   'must specifically identify what testimony is credible and what testimony

3   undermines the claimant's complaints.'"  Greger v. Barnhart, 464 F.3d 968, 972

4   (9th Cir. 2006) (citation omitted).  The ALJ's credibility findings "must be

5   sufficiently specific to allow a reviewing court to conclude the ALJ rejected the

6   claimant's testimony on permissible grounds and did not arbitrarily discredit the

7   claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

8        To find a claimant not credible, an ALJ must rely either on reasons

9   unrelated to the subjective testimony (e.g., reputation for dishonesty), internal

10  contradictions in the claimant's statements and testimony, or conflicts between the

11  claimant's testimony and the claimant's conduct (e.g., daily activities, work

12  record, unexplained or inadequately explained failure to seek treatment or to

13  follow prescribed course of treatment).  Orn, 495 F.3d at 636; Robbins, 466 F.3d

14  at 883; Burch, 400 F.3d at 680-81; Social Security Ruling ("SSR") 96-7p.

15  Although an ALJ may not disregard a claimant's testimony solely because it is not

16  substantiated affirmatively by objective medical evidence, the lack of medical

17  evidence is a factor that the ALJ can consider in his or her credibility assessment.

18  Burch, 400 F.3d at 681.

19       Evaluation of credibility and resolution of conflicts in the testimony are

20  solely functions of the Commissioner.  Greger, 464 F.3d at 972.  Accordingly, if

21  the ALJ's interpretation of the claimant's testimony is reasonable and is supported

22  by substantial evidence, it is not the court's role to "second-guess" it.  Rollins v.

23  Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted).

24            **2.   Analysis**

25       Plaintiff contends that the ALJ inadequately evaluated the credibility of her

26  subjective complaints.  (Plaintiff's Motion at 9-13).  The Court disagrees.

27       First, the ALJ properly discounted the credibility of plaintiff's subjective

28  complaints to the extent they were inconsistent with plaintiff's daily activities.

1    See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency

2    between the claimant's testimony and the claimant's conduct supported rejection

3    of the claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir.

4    1999) (inconsistencies between claimant's testimony and actions cited as a clear

5    and convincing reason for rejecting the claimant's testimony).  For example, as the

6    ALJ noted, contrary to plaintiff's allegations of disabling symptoms, at the hearing

7    plaintiff testified that she was able to "do laundry" and "dishes," although plaintiff

8    needs to take her time.  (AR 16, 33-34).  While plaintiff correctly suggests that a

9    claimant "does not need to be 'utterly incapacitated' in order to be disabled,"

10   Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation omitted), this

11   does not mean that an ALJ must find that a claimant's daily activities demonstrate

12   an ability to engage in full-time work (i.e., eight hours a day, five days a week) in

13   order to discount the credibility of conflicting subjective symptom testimony.  See

14   Molina, 674 F.3d at 1113 ("[An] ALJ may discredit a claimant's testimony when

15   the claimant reports participation in everyday activities indicating capacities that

16   are transferable to a work setting . . . [e]ven where those activities suggest some

17   difficulty functioning. . . .") (citations omitted).  Here, even though plaintiff stated

18   that she had difficulty functioning, the ALJ properly discounted the credibility of

19   plaintiff's subjective-symptom testimony to the extent plaintiff's daily activities

20   were inconsistent with a "totally debilitating impairment."  Id.; see, e.g., Curry v.

21   Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability

22   to "take care of her personal needs, prepare easy meals, do light housework and

23   shop for some groceries . . . may be seen as inconsistent with the presence of a

24   condition which would preclude all work activity") (citing Fair, 885 F.2d at 604).

25        Second, the ALJ properly discounted the credibility of plaintiff's subjective

26   complaints as inconsistent with plaintiff's generally "routine, conservative, and

27   non-emergency treatment" noted above.  (AR 17); see, e.g., Parra v. Astrue, 481

28   F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient

12

1  to discount a claimant's testimony regarding severity of an impairment."), cert.

2  denied, 552 U.S. 1141 (2008) (citation omitted).

3       Third, the ALJ properly discounted the credibility of plaintiff's subjective

4  complaints based on plaintiff's "unexplained or inadequately explained failure . . .

5  to follow [her] prescribed course of treatment."  Molina, 674 F.3d at 1113

6  (citations and internal quotation marks omitted); see SSR 96-7p at *8

7  ("[Claimant's] statements may be less credible if the level or frequency of

8  treatment is inconsistent with the level of complaints, or if the medical reports or

9  records show that the individual is not following the treatment as prescribed and

10 there are no good reasons for this failure."); see, e.g., Molina, 674 F.3d at 1114

11 (ALJ properly discounted plaintiff's credibility based on infrequency of treatment

12 where plaintiff's resistance to treatment was based on personal preference rather

13 than the result of plaintiff's mental impairment); Meanel v. Apfel, 172 F.3d 1111,

14 1114 (9th Cir. 1999) (In assessing credibility, ALJ properly considered doctor's

15 failure to prescribe and claimant's failure to request any serious medical treatment

16 for supposedly excruciating pain).  Here, as the ALJ noted, the record reflects that

17 despite repeated and emphatic warnings by several physicians that plaintiff needed

18 to follow the "healthy diet" and exercise plan they prescribed, there are multiple

19 notes in the record that plaintiff consistently failed to do so.  (See, e.g., AR 577

20 ["Pt eats whatever without any concern re calorie intake and the type of food" and

21 "[doctor's] concern re healthy diet and routine exercise explained in detail to the

22 Pt"]; AR 582, 592, 606, 628, 651 ["Problem List" includes "noncompliance [by

23 plaintiff] with dietary regimen" and "lack of exercise"]; AR 601, 623, 637 ["Pt

24 does not comply with healthy and appropriate diet [¶] [and] also does not exercise

25 [on] consistent basis"]).

26      Finally, the ALJ properly discredited plaintiff's testimony due, in part, to

27 the absence of supporting objective medical evidence.  Burch, 400 F.3d at 681;

28 Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on

13

the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted).  For example, as the ALJ noted, contrary to plaintiff's testimony that she has joint pain all over her body, the report of Dr. Siciarz's consultative examination indicated that plaintiff's range of motion in her back, shoulders, wrists, hands, hips, knees, and ankles were well within normal limits.  (AR 16) (citing Exhibit 2F at 3-4 [AR 321-22]). Moreover, as the ALJ also noted, Dr. Siciarz's report does not reflect evidence of disuse muscle atrophy that would be expected given plaintiff's alleged level of inactivity.  (AR 16) (citing Exhibit 2F [AR 319-23]); see Meanel, 172 F.3d at 1114 (ALJ properly discredited plaintiff's testimony where there was no evidence of muscular atrophy or other physical sign usually seen in an "inactive, totally incapacitated individual").

Accordingly, a remand or reversal on this basis is not warranted.

**V.    CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  June 30, 2015

                                                          /s/
                                        _____
                                        Honorable Jacqueline Chooljian
                                        UNITED STATES MAGISTRATE JUDGE